**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO. 15-22399-CIV-O'SULLIVAN**

**RODOLFO LEZCANO,**
        **Plaintiff,**

**v.**

**CAROLYN W. COLVIN,**
**Acting Commissioner of Social Security**
**Administration,**
        **Defendant**.

_____/

## ORDER

THIS MATTER is before the Court on the Plaintiff's Opening Brief in Support of His Motion for Summary Judgment (DE#24, 12/17/2015) and the Defendant's Motion for Summary Judgment with Supporting Memorandum of Law and Response to Plaintiff's Motion for Summary Judgment (DE#28, 12/18/2016). The plaintiff seeks reversal and remand of the Commissioner of Social Security's decision to deny the plaintiff's claims for Disability Insurance and Supplemental Security Income under Titles II and XVI of the Social Security Act. The complaint was filed pursuant to the Social Security Act, 42 U.S.C. §405(g) (hereinafter "Act"), and is properly before the Court for judicial review of a final decision of the Social Security Administration (hereinafter "SSA"). The parties consented to Magistrate Judge jurisdiction and this matter was referred to the undersigned pursuant to Judge Altonaga's Order dated October 7, 2015, (DE#21,10/7/15). Having carefully considered the filings and applicable law, the undersigned enters the following Order.

## PROCEDURAL HISTORY

On July 22, 2010, Rodolfo Lezcano's (hereinafter "plaintiff") applications for Disability

Insurance Benefits (hereinafter "DIB") and Supplemental Security Income (hereinafter "SSI"), under Title II and Title XVI of the Social Security Act, 42 U.S.C. § 401 et seq., were protectively filed.[1] (Tr. 45-46, 124). In his applications, the plaintiff alleged disability beginning on December 15, 2009, due to paranoid schizophrenia , depression, anxiety, and bipolar disorder. (Tr. 120, 128, 363). The plaintiff later claimed disabling conditions with his left arm. (Tr. 151). Both of the plaintiff's applications were denied initially, and plaintiff's DIB application was further denied on reconsideration. (Tr. 82-84, 86-87, 368-71).

An initial administrative hearing was held in this matter on February 17, 2012, before the Administrative Law Judge, Antonio Acevedo Torres (hereinafter "ALJ") (Tr. 54, 561-75), and he entered an opinion on February 24, 2012.  (Tr. 378-390).  Following those proceedings, on February 22, 2013, the Appeals Counsel (hereinafter "AC") remanded this case to the ALJ for a second administrative hearing which was held on January 9, 2014. (Tr. 39-43, 391-95).  ALJ Torres issued a decision on March 21, 2014, finding that the plaintiff is not disabled. (Tr. 25-38). On April 30, 2015, the AC denied the plaintiff's request to review the ALJ's March 21, 2014, decision. (Tr. 8-11). Accordingly, the ALJ's decision is considered the final decision for these purposes. Judicial review of the Commissioner's final decision is permitted by Section 205(g) of the Act.

## FACTS

### I. Plaintiff's Background and Plaintiff's Hearing Testimony

The plaintiff was born on October 25, 1964, and obtained a ninth-grade education, which he

---

[1] All references to "Tr." refer to the transcript of the Social Security Administration record filed on October 7, 2015. See (DE# 17, 10/07/2015). Moreover, the page numbers refer to those found on the upper right hand corner of each page of the transcript, as opposed to those assigned by the Court's electronic docketing system or any other page numbers that may appear.

completed in Cuba. (Tr. 118, 124, 129). In the plaintiff's DIB and SSI application, the plaintiff alleged his disability began on December 15, 2009. (Tr. 120, 363). The plaintiff previously worked as a self-employed subcontracting construction worker (Tr. 91-99, 129). The records provided indicate that the plaintiff did not work after the alleged disability date. (Tr. 128-29). The plaintiff alleged that he suffers from cocaine abuse in full remission, cocaine induced mood disorder, paranoid schizophrenia, rheumatoid arthritis, status post ruptured left distal radius, depression, anxiety, and bipolar disorder. (Tr. 128, 141).

On February 17, 2012, the plaintiff testified that he lives with his mother and father. (Tr. 566, 567). The plaintiff testified that he is unable to get along with others or could not be around other people because he has anger issues and is under house arrest for getting into a fight. (Tr. 567, 568). The plaintiff testified that he was arrested on multiple occasions due to his psychiatric condition. (Tr. 565, 566). The plaintiff admitted to being under house arrest on probation and is required to be tested for drugs. (Tr.567). In the plaintiff's testimony, the plaintiff stated that psychiatric conditions caused him to hear voices which led him to engage in fights with other people. (Tr. 568). Also, the plaintiff admitted to using cocaine and testified that he stopped using cocaine in 2010. (Tr. 565). In 2011, the plaintiff attended a program to help him quit using cocaine. (Id.). The plaintiff testified that he takes medications for his psychiatric condition and that the medications help with his condition. (Tr. 569, 570).

The plaintiff also testified that he has problems with: walking, standing, sitting, and lifting. (Tr. 566). Additionally, the plaintiff indicated that he can only stand and sit for forty minutes at a time and can only lift up to ten pounds. (Id.). At home, the plaintiff does not help with the chores, such as: washing dishes; laundry; housework; cooking; and grocery shopping. (Tr. 567). The plaintiff

also testified that he does not drive and does not go out of the house by himself. (Tr. 568, 569).

On January 9, 2014, the plaintiff testified that he stopped working due to arthritis. (Tr. 580). During the testimony, the plaintiff alleged that arthritis prevented him from lifting and carrying things. (Id.). Also, the plaintiff testified that he sees a mental health professional because he hears voices. (Tr. 581). The record indicates that the plaintiff's psychiatrist prescribed medication for the plaintiff and instructed the plaintiff to attend individual therapy. (Id.). The plaintiff testified that he does not do any cooking or house work. (Tr. 586). When at home, the plaintiff watches television and reads books. (Id.). Additionally, the plaintiff uses a cane to help him walk and stand. (Tr. 587). The plaintiff further contended that he is able to lift objects that are from ten to fifteen pounds, however, the plaintiff is unable to pour himself a glass of milk or water. (Tr. 588). The plaintiff also stated that he is able to bathe himself but may need assistance on certain occasions. (Id.).

## II. Plaintiff's Treating Hospitals and Physicians

On July 21, 2010, the plaintiff was admitted to the University of Miami Hospital and was treated by a psychiatrist, Dr. Alfredo Piniella (hereinafter "Dr. Piniella"). (Tr. 181-97). During treatment, the plaintiff complained of psychiatric problems, voiced thoughts of harming himself and fearfulness of losing control. (Tr. 182).  Dr. Piniella's notes indicated that the plaintiff's attention was fair with fair concentration, however, the plaintiff's judgment was moderately impaired. (Tr. 183). After staying in the hospital for two days, Dr. Piniella reported that the plaintiff showed improvements with his concentration and judgment. (Tr. 189).

On November 16, 2011, Dr. Piniella completed a Mental Medical Source Statement Ability to do Work Related Activities (hereinafter "Mental MSS") reviewing the plaintiff's condition. (Tr.

330-36). In the Mental MSS, Dr. Piniella noted that the plaintiff had "moderate"[2] limitations in understanding and remembering simple instructions, and carrying out simple instructions. (Tr. 331). Additionally, the Mental MSS is marked to show that the plaintiff has "extreme"[3] limitations when understanding and remembering complex instructions, carrying out complex instructions, and the ability to make judgments on complex work-related decisions. (Id.). Dr. Piniella further noted that the plaintiff's judgment and insight were "poor". (Id.). With respect to the plaintiff's ability to interact with colleagues, supervisors and the public, Dr. Piniella's notes indicated that the plaintiff's limitations are "extreme". (Tr. 332).

Between June 2011 and January 2012, the plaintiff was treated by Dr. Angel Vidal (hereinafter "Dr. Vidal"), a board certified Rheumatologist (Tr. 356-60). On June 6, 2011, Dr. Vidal's progress notes indicated that the plaintiff suffered from rheumatoid arthritis (hereinafter "RA"). (Tr. 352). On July 15, 2011, Dr. Vidal's progress notes indicated that the plaintiff continued to suffer from RA. (Tr. 351-52). On January 9, 2012, Dr. Vidal's progress notes indicated that the plaintiff had his psychological medications changed but did not remember the names of the new medications and that the plaintiff suffered from shoulder pain and wrist bilateral pain, with minimal swelling. (Tr. 347).

On January 30, 2012, Dr. Vidal noted that the plaintiff complained of pain in his knees, hands, shoulders, and feet. (Tr. 344). On the same day, Dr. Vidal completed a Physical Medical Source Statement Ability to do Work Related Activities (hereinafter "Physical MSS) on behalf of

---

[2] The term "moderate" means there is a more than slight limitation, but the plaintiff is still able to function satisfactorily. (Tr. 331).

[3] An "extreme" limitation labels the plaintiff as having no ability to function in this area. (Tr. 331)

the plaintiff. (Tr. 337). In the Physical MSS, Dr. Vidal noted that the plaintiff will never be able to lift eleven pounds or more, but can lift up to ten pounds for one-third of a full work day. (Tr. 338). Dr. Vidal also indicated that, when carrying an object, the plaintiff has the same limitations as when he is lifting. (Id.). Dr. Vidal also asserted that the plaintiff can sit for as much as two hours, and can only stand or walk for as much as forty-five minutes at one time without interruption, as well as in total during an eight hour work-day. (Tr. 339). Dr. Vidal noted that the plaintiff medically requires the use of a cane and cannot walk more than two blocks without a cane. (Id.). In addition, Dr. Vidal noted that the plaintiff suffers from RA, which limits the plaintiff's use of hands (reaching, handling, fingering, feeling, push/pull) to no more than two-thirds of his work-day. (Tr. 340). Dr. Vidal opined that postural activities for the plaintiff are limited as well. (Id.). Dr. Vidal's notes indicated that the plaintiff must never climb ladders or scaffolds, and can only perform the following for up to one-third of the time: climbing stairs and ramps, balance, kneel, crouch, and crawl. (Tr. 341). Also, Dr. Vidal noted that the plaintiff should never be exposed to unprotected heights, moving mechanical parts, operating a motor vehicle, humidity, wetness, dusts, odors, fumes, extreme cold, and extreme heat. (Tr. 342). During the plaintiff's physical MSS, Dr. Vidal noted that the plaintiff should not operate a motor vehicle. (Id.).

On December 1, 2010, Dr. Guillermo Somodevilla (hereinafter "Dr. Somodevilla") completed a treating source orthopedic questionnaire regarding the plaintiff's back pain. (Tr. 235, 236). Dr. Somodevilla's notes indicated that the plaintiff had a limited range of motion when experiencing an exacerbation of pain. (Tr. 236). Also, Dr. Somodevilla noted that the plaintiff's grip strength was 5/5, his strength was 5/5 in the lower extremities, and that the plaintiff did not need a hand held device for ambulation. (Id.) Dr. Somodevilla also found that the plaintiff was capable of

performing fine and gross manipulation. (Id.).

On December 12, 2010, the plaintiff sought emergency room care at Hialeah Hospital due to injuries sustained to his left arm secondary to a fall. (Tr. 262-264). Thereafter, on December 23, 2010, the plaintiff was referred Dr. Ignacio J. Calvo (hereinafter "Dr. Calvo"), an orthopedic surgeon.  Dr. Calvo performed a closed reduction and application of an external fixator on the plaintiff's left arm. (Tr. 267-272).  On February 23, 2011, the plaintiff returned for a follow up visit to Dr. Calvo. (Tr. 296). During the visit, Dr. Calvo noted that there was a purulent secretion at the level of the distal wires, but x-rays revealed the fracture was in good position. (Id.). The note also indicated that the plaintiff's wound was cleaned and he was prescribed medication.(Id.).

On April 3, 2013, the plaintiff was admitted to the Miami Behavioral Health Center and was assessed by Madiane Perez (hereinafter "Perez"), who is a licensed mental health counselor. (Tr. 537). The plaintiff was fairly groomed and properly dressed, however, the plaintiff seemed disheveled and poorly rested. (Tr. 553). The notes indicated that the plaintiff has symptoms that have increased in severity and frequency which include: sleeping difficulties, frequent crying spells, lack of energy and motivation, isolation, helplessness, anhedonia, and hopelessness. (Id.). Perez further noted that the plaintiff is irritable and sometimes aggressive to the point that the plaintiff had a problem at work. (Id.). Perez's report concluded that the plaintiff had a GAF[4] score of 48 and that the plaintiff suffers from: (1) major depressive disorder with psychotic features; (2) anxiety disorder;

---

[4]"Axis V - Global Assessment of Functioning," DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, at 25 (4TH ED. 1994). GAF scores are "not an assessment of a claimant's ability to work, but a global reference scale to aid in the treatment of an ongoing condition." The Commissioner of the Social Security Administration "has declined to endorse the GAF scale for 'use in the Social Security and SSI disability programs,' and has indicated that GAF scores have no 'direct correlation to the severity requirements of the mental disorders listings.'" Newsome ex rel. Bell v. Barnhart, 444 F. Supp. 2d 1195, 1198 (D. Ala. 2006) (citations omitted).

and (3) RA. (Id.)

### III. Consultative Examinations

On October 5, 2010, the plaintiff participated in a Medical Disability and Social Security Examination performed by Mayra Miro, Psy. D. (hereinafter "Dr. Miro"). (Tr. 198, 202). Dr. Miro conducted a general clinical evaluation including an assessment of the plaintiff's mental status. (Tr. 198-202). During the plaintiff's mental status examination, Dr. Miro noted that the plaintiff's general attitude was cooperative throughout the evaluation and that the plaintiff put forth sufficient effort on cognitive tasks presented. (Tr. 198). With respect to the plaintiff's mental status examination, Dr. Miro noted that there were no impairments in the plaintiff's motor coordination or mobility, and that the plaintiff's psychomotor behavior was normal. (Tr. 200). Additionally, Dr. Miro noted that the plaintiff's judgment and insight were both poor, as the plaintiff evidenced as paranoid on his solutions to hypothetical social problems. (Id.). Regarding the plaintiff's affect and mood, Dr. Miro noted that the plaintiff's affect was anxious and that he reported his mood was better with current medications. (Id.). The report concluded that the plaintiff had a GAF score of 60 and that the plaintiff's prognosis was improving with current treatment, and "continued out-patient psychiatric follow-up for treatment with psychotropic medications appear warranted." (Tr. 201). Dr. Miro also noted that the plaintiff reported being completely independent in all his self-care including personal hygiene, grooming, dressing, eating, and bathing. (Id.). Regarding social functioning, the plaintiff indicated that he stays mostly at home with his family and goes out to places with his wife or another family member. (Id.).

On November 18, 2010, a Report of Contact was completed by Laquanda Clark, on behalf of the Miami Area Disability Determinations District Office, (hereinafter "Ms. Clark") regarding the

plaintiff. (Tr. 134). The report indicated that the claimant does not have any friends, but spends much of his time with his family, with whom he gets along. (Id.). The plaintiff does not cook or clean but he will sometimes help clean the kitchen by sweeping. (Id.). The report further indicated that the plaintiff stated that his hobbies include: reading, drawing, and watching television. (Id.).

Thereafter, the plaintiff was referred to Dr. Laura M. Artiles (hereinafter "Dr. Artiles") by the SSA, for a psychological evaluation, including a mental status examination and a behavioral observation, which was conducted on March 28, 2011. (Tr. 311). In the mental status examination, Dr. Artiles noted that the plaintiff felt more stable because he is following psychiatric treatment, but the plaintiff admitted that he has always had a problem keeping a stable mood and becoming angry for no reason. (Tr. 312). Dr. Artiles noted that the plaintiff hears voices telling him good and bad things, specifically to make him angry with his wife. (Id.). Dr. Artiles also noted that the plaintiff stated that he experiences hallucinations and paranoid thoughts, but this occurs less frequently because he is able to control them and that the plaintiff felt more calm when he took the medication. (Id.). Dr. Artiles' notes indicated that the plaintiff had been involved in fights. (Id.). Dr. Artiles' notes further indicated that the plaintiff's cognition assessment showed that the plaintiff was alert and coherent. (Id.). Dr. Artiles noted that the plaintiff's immediate memory was fair because the plaintiff was able to remember five digits forward and three digits backwards. (Id.). However, Dr. Artiles' notes indicated that the plaintiff's recent memory was poor as a result of his lack of ability to remember the words that were told to him at the beginning of the examination. (Id.). Despite the plaintiff's memory, the plaintiff appeared stable and did not bring forth any delusional thoughts. (Id.).

Dr. Artiles also noted that the plaintiff's daily activities of living (hereinafter "ADL")

included that the plaintiff does not drive because his driver's license was suspended three years ago due to fights, the plaintiff is placed under community control house arrest, and that the plaintiff spends his time at home feeling depressed. (Tr. 313). Additionally, Dr. Artiles noted that the plaintiff does not feel like doing anything most of the time, but sometimes will clean the house, his room, and even prepare a simple meal. (Id.). Dr. Artiles noted that the plaintiff takes care of his hygiene needs alone. (Id.).

## IV. Residual Functional Capacity Assessments

On April 12, 2011, the SSA conducted a Physical Residual Functional Capacity Assessment (hereinafter "RFC") of the plaintiff. (Tr. 315). Dr. Olga M. Garcia (hereinafter "Dr. Garcia") evaluated the plaintiff on behalf of the Disability Determinations Services (hereinafter "DDS"). (Tr. 322). Dr. Garcia's evaluation indicated that the plaintiff has the ability to occasionally lift up to twenty pounds, and frequently lift ten pounds (Tr. 316). After examining the plaintiff, Dr. Garcia concluded that the plaintiff could stand and/or walk for about six hours in an eight-hour workday, and sit for about six hours in an eight-hour workday. (Id.). Dr. Garcia noted that the plaintiff's symptoms appeared credible and attributable to a medical determinable impairment that will result in some limitation of residual function.(Tr. 320).

On November 29, 2011, the plaintiff underwent a Mental RFC assessment which was completed by the SSA. (Tr. 218). Dr. Robert Hodes (hereinafter "Dr. Hodes") performed the Mental RFC as well as a Psychiatric Review Technique on November 29, 2011. (Tr. 218-234). In the Mental RFC, Dr. Hodes noted that the plaintiff's ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances was moderately limited. (Tr. 218). Additionally, the plaintiff's ability to work in coordination with or proximity to others without being

10

distracted by them was moderately limited. (Id.). Dr. Hodes noted that the plaintiff's ability to go through an entire work week without any interruptions from psychologically based symptoms is moderately limited. (Tr. 219). The report noted that the plaintiff's ability to interact appropriately with the general public and to get along with coworkers without distracting them is also moderately limited. (Id.). Furthermore, Dr. Hodes noted that the plaintiff's ability to respond appropriately to changes in the work setting and the ability to set realistic goals is also moderately limited. (Id.).

## V. Examination of Vocational Expert by ALJ

Jeanine Ann Salak, a vocational rehabilitation counselor and a vocational expert (hereinafter "Ms. Salak"), testified at the February 17, 2012, hearing held before the ALJ. (Tr. 571, 572). Ms. Salak classified the plaintiff's past relevant work as a construction worker as heavy, and performed usually between medium and heavy. (Tr. 572). The ALJ posed a hypothetical to Ms. Salak, and based on the ALJ's hypothetical, Ms. Salak opined that the plaintiff would be able to do light, unskilled work in the same scenario. (Tr. 574). Ms. Salak listed light level jobs that the plaintiff is able to perform such as: a fast food worker, and a housekeeper. (Id.). Ms. Salak noted that the plaintiff would not be able to do any past relevant work because it would range between medium and heavy. (Id.). Ms. Salak noted that the sedentary and unskilled work would require the need to speak English. (Id.). Because the plaintiff does not speak English, Ms. Salak noted that the plaintiff would not be able to do all the jobs that would be sedentary and unskilled. (Id.).

During a hearing held on January 9, 2014, Gary Fanning, a vocational expert (hereinafter "Mr. Fanning") gave testimony. (Tr. 590). Mr. Fanning noted that the plaintiff is able to perform medium or light and sedentary work from a physical standpoint. (Tr. 591). Mr. Fanning also noted that from a mental standpoint, the plaintiff is able to follow, understand and remember simple job

instructions and can occasionally deal appropriately with supervisors, coworkers and the public. (Id.).
Mr. Fanning opined as to the jobs that the plaintiff would be able to perform which included: a
kitchen helper; an industrial cleaner; a sweeper; a dining room attendant; a housekeeper; a marker[5];
a cafeteria attendant; a food and beverage order clerk; a surveillance system monitor; and a charge
account clerk. (Tr. 591-93).

## ALJ'S DECISION-MAKING PROCESS

"Disability" is defined as the "inability to do any substantial gainful activity by reason of any
medically determinable physical or mental impairment that can be expected to result in death, or has
lasted or can last for a continuous period of not less than twelve months . . . ." 42 U.S.C. §§ 416(I);
423(d)(1); 20 C.F.R. § 404.1505 (2005). The impairments(s) must be severe, making the plaintiff
"unable to do his previous work . . . or any kind of substantial gainful work which exists in the
national economy . . . ." 42 U.S.C. § 423(d)(1); 20 C.F.R. § 404.1505-404.1511 (2005).

To determine whether the plaintiff is entitled to disability benefits, the ALJ must apply a five-
step analysis. 20 C.F.R. § 404.1520(a) - (f). The ALJ must first determine whether the plaintiff is
presently employed or engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(1)(I). If
so, a finding of non-disability is made and the inquiry ends. (Id.).

Second, the ALJ must determine whether the plaintiff suffers from a severe impairment or
a combination of impairments. 20 C.F.R. § 404.1520(a)(1)(ii). If the plaintiff does not, then a finding
of non-disability is made and the inquiry ends. (Id.).

Third, the ALJ compares the plaintiff's severe impairments to those in the listings of

---

[5] Mr. Fanning defined a marker as someone who puts price tags on items in a warehouse.
(Tr. 591-93).

impairments located in Appendix I to Subpart 404 of the Code of Federal Regulations. 20 C.F.R.§ 404.1520(d), Subpart P, Appendix I. 20 C.F.R. § 404.1520(a)(1)(iii). Certain impairments are so severe, whether considered alone or in conjunction with other impairments, that if such impairments are established, the regulation requires a finding of disability without further inquiry into the plaintiff's ability to perform other work. See Gibson v. Heckler, 762 F.2d 1517, 1518 n.1 (11th Cir. 1985). If the impairment meets or equals a listed impairment, disability is presumed, and benefits are awarded. 20 C.F.R. § 404.1520(d).

Fourth, the ALJ must determine whether the plaintiff has the "residual functional capacity" to perform his or her past relevant work. "Residual functional capacity"("RFC"), is defined as "what you can do despite your limitations." 20 C.F.R. § 404.1520(a)(1)(iv). This determination takes into account "all relevant evidence," including medical evidence, the claimant's own testimony, and the observations of others. (Id.). If the plaintiff is unable to perform his or her past relevant work, then a prima facie case of disability is established and the burden of proof shifts to the Commissioner to show at the fifth step that there is other work available in the national economy which the plaintiff can perform. 20 C.F.R. § 404.1520(e)-(9); See Barnes v. Sullivan, 932 F.2d 1357, 1459 (11th Cir. 1991) (The claimant bears the initial burden of proving that he is unable to perform pervious work.).

Fifth, if the plaintiff cannot perform his or her past relevant work the ALJ must decide if the plaintiff is capable of performing any other work in the national economy. 20 C.F.R. § 404.1520(a)(1)(v).

## ALJ'S FINDINGS

The ALJ hearing held a hearing on January 9, 2014, on the Order of Remand from the Appeals Council (Tr. 25, 39, 391-95).  On March 21, 2014, the ALJ found the plaintiff was not

13

disabled under the relevant sections of the Act. (Tr. 38). At step one, the ALJ found that the plaintiff was not presently participating in and had not participated in substantial gainful activity since the amended alleged onset date of disability, December 15, 2009. (Tr. 28). At step two, the ALJ found that the plaintiff did have severe impairments including cocaine abuse in full remission, cocaine induced mood disorder, schizophrenia, RA, and status post ruptured left distal radius. (Id.). However, at step three, the ALJ found that the plaintiff's impairments did not reach the level of severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR § 404.1520(d), § 404.1525, § 404.1526, § 416.920(d), § 416.925 and § 416.926). (Id.).

In the ALJ's evaluation of the plaintiff's mental impairments, the ALJ considered two reports, one from Dr. Miro, and one from Dr. Artiles. (Tr. 29). On October 5, 2010, the plaintiff reported to Dr. Miro, a consultative psychologist, that he was completely independent in all of his self-care, including: personal hygiene; grooming; dressing; eating; and bathing. (Tr. 29). The ALJ noted that the plaintiff further reported that he sometimes helped clean the kitchen and sometimes helped with the household organization. (Id.). The ALJ also noted that, on March 28, 2011, the plaintiff reported to Dr. Artiles, a consultative psychologist, that he took care of himself and could prepare a simple meal, that he watched televison at times and cleaned his house at times as well. (Id.). With respect to social functioning, the ALJ determined that the plaintiff has moderate difficulties. (Id.). In the March 28, 2011, evaluation done by Dr. Artiles, the ALJ indicated that the plaintiff had been placed on community control house arrest and had his driver's license suspended for three years due to fights. (Id.). The ALJ further noted that the plaintiff does not have any friends, gets along with family members, and would get into fights with other people because he did not get along with them.(Id.). The plaintiff admitted that his medication made him feel better and helped

calm him down. (Id.).

The ALJ found that the plaintiff has moderate difficulties with respect to concentration, persistence, or pace. (Id.). The ALJ noted that the plaintiff reported his hobbies as reading, drawing, and watching television. (Id.). The ALJ pointed out that the October 5, 2010, evaluation by Dr. Miro did not show any impairment in concentration, and that task persistence was adequate. (Id.). The plaintiff was fount to be logical, coherent, and in touch with reality. (Id.). With respect to episodes of decompensation, the ALJ found, based on the record, that the plaintiff has experienced no episodes of decompensation, which have been of extended duration. (Id.).

Based on the evaluation of the plaintiff's mental impairments, the ALJ determined the plaintiff's impairments have manifested some of the signs and symptoms enumerated in the Commissioner's listings, however, the impairments did not reach the level of severity required to meet or equal any of the listings to satisfy the "paragraph B" criteria.[6] (Tr. 28). The ALJ determined that because the plaintiff's impairments do not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, each of extended duration, the "paragraph B" criteria was not satisfied. (Tr. 30).

The ALJ then considered whether the "paragraph C" criteria were satisfied. (Id.). The ALJ determined that because the record failed to document repeat episodes of decompensation, there has

---

[6]"To satisfy the 'paragraph B' criteria, the mental impairments must result in at least two of the following: marked restriction of activities for daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. A marked limitation means more than moderate but less than extreme. Repeated episodes of decompensation, each of extended duration, means three episodes within one year, or on average of once every four months, each lasting for at least two weeks." Moore v. Barnhart, 405 F.3d 1208, 1213 (11th Cir. 2005).

not been a residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands would be predicated to cause the individual to decompensate and there has not been an inability to function outside a highly supported living arrangement. (Id.). Therefore, the ALJ found that the evidence fails to establish the presence of the "paragraph C" criteria. (Id.).

At step four, the ALJ found that the plaintiff has the RFC to perform a limited range of medium and light work as defined in 20 C.F.R. 404.1567(b)(c) and 416.967(b)(c)  and is able to perform the demands of unskilled work that involves occasional "dealing with supervisors, the public, and coworkers. (Id.). The ALJ found that the plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely credible. (Tr. 35).

At step five, the ALJ found that the plaintiff has past relevant work as a construction worker and based on the vocational expert's testimony, the plaintiff is unable to perform past relevant work. (Id.). Because the plaintiff is unable to perform his past relevant work, the ALJ must determine whether the plaintiff is able to perform other work in the national economy. (Id.). The factors the ALJ considers when determining whether the plaintiff is able to perform other work in the national economy are: the plaintiff's RFC; the plaintiff's age; the plaintiff's education; and the plaintiff's work experience. (Tr. 37). During the hearing on January 9, 2014, the ALJ asked Mr. Fanning, the VE, whether jobs exist in the national economy for an individual with the plaintiff's limitations. (Id.). Mr. Fanning testified that the plaintiff would be able to perform the requirements of some jobs in the national economy. (Id.). The list of jobs Mr. Fanning indicated that the plaintiff would be able to perform included occupations such as: a kitchen helper; an industrial cleaner; a dining room

attendant; a light housekeeper; a marker; a cafeteria attendant; a food order clerk; a surveillance system monitor; and a charge account clerk. (Tr. 37, 38). Based on Mr. Fanning's testimony and the plaintiff's work experience; the plaintiff's RFC; the plaintiff's age; and the plaintiff's education, the ALJ concluded that the plaintiff was capable of making an adjustment to other work in the national economy. (Tr. 38).

## STANDARD OF REVIEW

The Court must determine whether it is appropriate to grant either party's motion for summary judgment. Judicial review of the factual findings in disability cases is limited to determining whether the record contains substantial evidence to support the ALJ's findings and whether the correct legal standards were applied. 42 U.S.C. § 405(g); see Wolfe v. Chater, 86 F.3d 1072, 1076 (11th Cir. 1996) (holding the reviewing court must not re-weigh evidence or substitute their discretion). On judicial review, decisions made by the defendant (the Commissioner of Social Security) are conclusive if supported by substantial evidence and if the correct legal standard was applied. 42 U.S.C. § 405(g) (2006); see Kelley v. Apfel, 185 F.3d 1211, 1213 (11th Cir. 1999). Eleventh Circuit Courts have determined that "substantial evidence" is more than a scintilla, but less than a preponderance and is generally defined as such relevant evidence which a reasonable mind would accept as adequate to support a conclusion. See Miles v. Charter, 84 F.3d 1397, 1400 (11th Cir. 1996). In determining whether substantial evidence exists, "the court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision." Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995).

The restrictive standard of review, however, applies only to findings of fact, no presumption of validity attaches to the Commissioner's conclusions of law, including the determination of the

proper standard to be applied in reviewing claims. See Cornelius v. Sullivan, 936 F.2d 1143, 1145011456 (11th Cir. 1991) ("Commissioner's failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal."); accord Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990).

The reviewing court must be satisfied that the decision of the Commissioner is grounded in the proper application of the appropriate legal standards. See, Davis v. Shalala, 985 F.2d 528, 531 (11th Cir. 1993). The court may not, however, decide the facts anew, reweigh evidence or substitute its judgment for that of the ALJ, and even if the evidence weighs against the Commissioner's decision, the reviewing court must affirm if the decision is supported by substantial evidence. See, Miles, 84 F.3d at 1400; see also Baker v. Sullivan, 880 F.2d 319, 321 (11th Cir. 1989). Factual evidence is presumed valid, but the legal standard applied is not. See, Martin, 894 F.2d at 1529. The Commissioner must apply the correct legal standard with sufficient reasoning to avoid reversal. (Id.).

## LEGAL ANALYSIS

The plaintiff challenges the ALJ's decision of March 21, 2014, and asserts that the Commissioner's decision is not based on substantial evidence and contains errors of law. (DE #24, at 2, 12/17/2015). The plaintiff presented four issues: 1) the administrative record provided by the Commissioner does not include a transcript of the January 9, 2014, hearing; 2) the ALJ did not properly assess the opinion evidence of record; 3) the ALJ's RFC finding is not supported by substantial evidence; and 4) the ALJ did not properly assess the plaintiff's credibility. (Id. at 2). The undersigned finds that the ALJ's findings are substantially justified by the record, and that the ALJ's decision should be affirmed. See Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996); see also Baker v. Sullivan, 880 F.2d 319, 321 (11th Cir. 1989).

18

**I. Transcript of the January 9, 2014, Hearing**

As an initial matter, the plaintiff contends that the administrative record does not include a transcript of the January 9, 2014, hearing. (DE# 24, at 4, 12/17/2015). The plaintiff argues that it is imperative that the plaintiff's counsel and the Court have the opportunity to review the hearing transcript to verify whether the RFC finding in the ALJ's decision comports with the hypothetical RFC question(s) posed to the VE during the hearing. Furthermore, the plaintiff argues that a remand is warranted because the Court is unable to verify whether the plaintiff received a full and fair hearing or whether the ALJ's decision comports with the substantial evidence of the record on the basis that there is no means to verify the testimony of the claimant or of the VE. (Id. at 5). The plaintiff requests that the Commissioner provide a copy of the transcript in order to provide the plaintiff the opportunity to review and respond to any unaddressed errors of law which may arise therefrom. (Id.).

On January 22, 2016, (DE # 27) the Commissioner of Social Security filed a Supplemental Transcript which includes the transcript from the January 9, 2014, hearing. (Tr. 576-94). Therefore, the record includes a transcript of the January 9, 2014, hearing and remand is not warranted.

**II. The ALJ Properly Assessed the Opinion Evidence of Record**

**A. Treatment Notes from Miami Behavioral Health Do Not Provide a Basis for Changing the ALJ's Decision**

The plaintiff alleges that the ALJ failed to acknowledge the post-hearing, though pre-decision, records submitted from Miami Behavioral Health. (DE# 24, at 5, 12/17/2015). On January 30, 2014, prior to the ALJ's March 21, 2014, decision, the plaintiff's hearing counsel

submitted records from Miami Behavioral Health. (Tr.38, 535). The plaintiff argues that the ALJ

failed to consider the records in his decision-making process because there was not an exhibit list

attached to the ALJ's decision. (DE# 24, at 5, 12/17/2015) (Tr. 33). Further, the plaintiff

contends that the records from Miami Behavioral Health are relevant to the instant case because

the records relate to the period at issue and corroborate the opinions of the plaintiff's treating

psychiatrist, Dr. Piniella. (Id.) On April 13, 2013, the plaintiff underwent a psychological

evaluation with Dr. Piniella. (Id.). On examination, the plaintiff presented a disheveled and

poorly rested appearance and contradicted affect, and the plaintiff also became emotional during

the evaluation interview. (Id.). After the April 13, 2013, interview, the plaintiff was diagnosed

with: major depressive disorder, recurrent, severe, with psychotic features; anxiety disorder not

otherwise specified; and was assessed with  a GAF score of 48. (DE# 24 at 6, 12/17/2015) (Tr.

553, 554). Also, the plaintiff argues that he is prejudiced because the ALJ did not include an

exhibit list with his decision and the plaintiff has no means to verify whether the ALJ properly

considered all relevant evidence. (Id.).

　　　　The defendant argues that the plaintiff fails to show what additional limitations he may

have based on the Miami Behavioral Heath records, because the plaintiff's other doctors had

similar diagnoses. (DE #28, at 11, 02/18/2016).  The defendant further argues that the records to

which the plaintiff refers, are from Perez, who is a licensed mental health counselor, and is not an

acceptable medical source because the opinion of a licensed mental health counselor is not a

medical opinion and is not entitled to any special significance or consideration. (Id. at 10.). 20

C.F.R. § 416.913 lists sources who can provide evidence to establish impairment. See 20 C.F.R.

§ 416 913(d); see also 20 C.F.R. § 404.1513(d). Courts in the Eleventh Circuit have held that

licensed mental health counselors are not listed as acceptable medical sources. See Brown v. Comm'r of Soc. Sec., 2015 U.S. Dist. LEXIS 30491 at 9 (M.D. Fla. 2015). Rather licensed mental health counselors "are at most 'other sources' that an ALJ *may*, but is not required to, consider in determining whether a claimant is disabled. (Id.) (citing 20 C.F.R. § 416.913(d)). Accordingly, even though the opinions of licensed counselors may be relevant, those opinions need not be provided deference. (See, Id.)

In this case, the ALJ's assessment of the plaintiff's mental RFC, considered the entire record and found that the plaintiff has the RFC to "perform a limited range of medium and light work as defined in 20 CFR 404.1567(c) and 416.967(c) and is able to perform the demands of unskilled work that involves occasional dealing with supervisors, the public and coworkers." (Tr. 30). In making the finding, the ALJ "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on" the applicable requirements. (Id.). The ALJ also considered opinion evidence according to the applicable requirements. (Id.). The Miami Behavioral Health records do not show any additional limitations that were not considered by the ALJ.

In support of the plaintiff's argument, the plaintiff refers to the guidance in the Hearings Appeals and Litigation Law Manual (hereinafter "HALLEX"), specifically HALLEX I-2-1-15 ("HALLEX"), which requires all documents related to the issues in the case be part of the record. (DE# 24, at 6, 12/17/2015). According to HALLEX, "[a]n ALJ may request that the State agency not use a particular treating, nontreating, or other medical source to conduct a complete medical examination or test if he or she has a good reason." Wright v. Colvin, No. 12-21773-CIV, 2014 U.S. Dist. LEXIS 94467 (S.D. Fla. July 11, 2014) (citing HALLEX, §I-2-5-20(C)).

The Eleventh Circuit has not addressed whether an ALJ's violation of the guidance set forth in the HALLEX is grounds for remand.  Childs v. Astrue, No. 2:07CV945-SRW (WO), 2009 U.S. Dist. LEXIS 28254 (M.D. Ala. Mar. 31, 2009).  The Court of Appeals, which have addressed the issue, agree that the HALLEX does not carry the force of law. (Id.) (see Moore v. Apfel, 216 F.3d 864, 868-69 (9 th Cir. 2003) ("The text of [the 'purpose' statement of the HALLEX] indicates that HALLEX is strictly an internal guidance tool, providing policy and procedural guidelines to ALJs and other staff members. As such, it does not prescribe substantive rules and therefore does not carry the force and effect of law.").

A review of the record and the ALJ's decision demonstrates that the ALJ's decision to not acknowledge the post-hearing, through pre-decision, records submitted from Miami Behavioral Health is supported by good cause because Perez is a licensed mental health counselor, and is not an acceptable medical source.  The ALJ had the right to exclude certain experts and even a candid, on the record admission of doing so is not evidence of bias. See Wright, 2014 U.S. Dist. LEXIS 94467 (S.D. Fla. July 11, 2014).

**B. The ALJ Assigned the Proper Weight to the Opinions of Drs. Piniella and Vidal**

The plaintiff contends that the ALJ erred in giving no weight to the opinions of Drs. Piniella and Vidal. (DE# 24, at 6, 12/17/2015). In response, the defendant argues that the ALJ considered Dr. Piniella's opinion and Dr. Vidal's opinion, and because the limitations of the two doctors were inconsistent with their own clinical findings, the ALJ properly assigned no weight to those opinions. ( DE# 28, at 11, 02/18/2016). With respect to Dr. Piniella's opinion, the plaintiff argues that the ALJ failed to articulate the weight he accorded to the opinions contained in Dr. Piniella's treatment notes, weighing the medical source statements in isolation. (DE# 28, at

7, 12/17/2015). Furthermore, the plaintiff contends that the ALJ's rationale for discrediting Dr. Piniella's medical source statement opinions is not based on the substantial evidence of record and that the ALJ had a duty to articulate the weight accorded the treating source opinion in its entirety, which necessarily includes the psychiatrist's treatment notes. (Id.).

A Social Security ALJ is required to clearly articulate the reasons for giving less weight to the testimony of a treating physician. See 20 C.F.R. § 404.1520(a). Where the court's limited review precludes reweighing the evidence anew, and the ALJ articulates specific reasons for failing to give a treating physician's opinion controlling weight, the court finds no reversible error. Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. Ga. 2005). An ALJ is required to consider and explain the weight given to different medical doctors such as examining and consulting physicians. McCloud v. Barnhart, 166 Fed. App'x 410, 419 (11th Cir. 2006). However, in limited circumstances, the failure of an ALJ to state the weight given to the medical opinion of a physician may be harmless error. (Id. at 34) (citing Caldwell v. Barnhart, 261 Fed. App'x 188, 191 (11th Cir. 2008)). In Caldwell, the Court held that the ALJ's failure to state what weight she had accorded to an examining physician resulted in harmless error because the ALJ had mentioned the physician's findings within the determination and the findings were not inconsistent with the record. See, Caldwell, 261 Fed. App'x at 191. Although the opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician, the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion. 20 C.F.R. § 404.1527(c)(2).

In this case, in support of the ALJ's decision to reject the limitations imposed by Dr. Piniella, the ALJ noted that the limitations imposed by Dr. Piniella are inconsistent with his

treatment notes of record and the other medical evidence of record. (Tr. 33). Therefore, the ALJ

accorded no weight to Dr. Piniella's opinion regarding limitations. (Tr. 33). In support of the

ALJ's finding, the ALJ reasoned that the notes from Dr. Piniella indicated that the plaintiff's

symptoms improved during the course of the his treatment, but Dr. Piniella's opinion in the

Mental MSS conducted on November 16, 2011, indicated that the plaintiff had extreme

limitations in several functional categories, and had only moderate or marked limits in others.

(Tr. 33, 331-33). Because Dr. Piniella's notes and opinions are inconsistent with each other, the

ALJ concluded that the record shows that the plaintiff's symptoms have improved when the

treatment is followed. (Tr. 33).

Additionally, the ALJ accorded no weight to the determinations and severe limitations

imposed by Dr. Vidal in the assessment report. (Tr. 35). The plaintiff was treated by Dr. Vidal

from June 7, 2011, through November 15, 2013, for complaints of pain in the knees, hands,

shoulders, and feet secondary to RA. (Tr. 34). The ALJ noted that Dr. Vidal's notes indicated

that the plaintiff did not experience any side effects from the medications and the plaintiff's RA

responded to treatment. (Id.). Specifically, the July 15, 2011, notes show only mild swelling of

the wrists.  On January 9, 2012, the plaintiff admitted to feeling much better with the RA

medications and experiencing only mild pain. (Id.). On January 30, 2012, Dr. Vidal's notes

indicated that the laboratory studies were normal, however, on the same day, Dr. Vidal

completed a physical assessment report which indicates that the claimant suffered from RA

manifested by pain and swelling. (Id.).

The ALJ noted that Dr. Vidal also limited the claimant to lifting and carrying up to ten

pounds occasionally and sitting for two hours in an eight-hour workday and standing/walking

forty-five minutes in an eight-hour workday. (Tr. 35). The ALJ further indicated that Dr. Vidal noted that the plaintiff needed a cane for ambulation and limited the plaintiff to walking two blocks without a cane. (Id.).

However, the ALJ also noted that Dr. Vidal indicated the plaintiff could use his hands frequently for reaching, handling, finger, feeling, pushing and pulling and could occasionally climb stairs and ramps. (Id.). The ALJ further found that Dr. Vidal's notes dated January 30, 2012, show normal laboratory studies and that the musculotesketal examination Dr. Vidal performed revealed wrist pain with only mild swelling and there was a full range of motion of the extremities with no swelling. (Id.). The ALJ further indicated that Dr. Vidal's assessment report indicated that the claimant could only stand and walk for forty-five minutes in an eight-hour workday and needed a cane for ambulation. (Id.). According to the ALJ, Dr. Vidal's notes also indicated improvement in the plaintiff's RA. (Id.) In accordance with the foregoing, the ALJ accorded no weight to Dr. Vidal's physical assessment report, because the limitations imposed by Dr. Vidal are inconsistent with his treatment notes of record, particularly the doctor's notes from the January 30, 2012, office visit.

In accordance with the foregoing, the undersigned finds no error in this category, because substantial evidence supports the ALJ's determination that Dr. Piniella's opinion and Dr. Vidal's opinion were both inconsistent with the treatment records. See Crawford v. Comm'r of Soc. Sec., 363 F.3d 115, 1159-60 (11 th Cir. 2004) (holding that the claimant is not entitled to relief when the medical records provided by an acceptable medical source are inconsistent with findings.). Moreover, the ALJ had good cause to accord no weight to the opinions of Dr. Piniella and Dr. Vidal because the record shows that the plaintiff's symptoms respond to treatment when

followed. (Tr. 33). <u>See also</u> <u>Duval v. Comm'r of Soc. Sec.</u>, 628 Fed. Appx. 703, 709 (11th Cir. Fla. 2015).

### III. Substantial Evidence Supports the ALJ's RFC Finding

The plaintiff argues that the ALJ's RFC finding is deficient because the finding does not take into account all of the limitations that arise from the impairments. (DE# 24, at 15, 12/17/2015). The plaintiff alleges that the ALJ provided either woefully deficient or no rationale in failing to articulate the weight accorded and/or in rejecting the plaintiff's treating source opinions, contrary to what is required under the regulations. (<u>Id.</u> at 16). In support of the plaintiff's argument, the plaintiff relies on the Social Security Ruling ("SSR"), 96-8p, asserting that the ALJ's RFC assessment must be based on all of the relevant evidence in the case record, which includes ADL, lay evidence, recorded observations, and medical source statements. (<u>Id.</u>).

Additionally, the plaintiff contends that even though the ALJ found that the plaintiff suffered from the "severe" medically determinable impairments of RA and status-post ruptured distal left radius, the ALJ's RFC finding does not account for any manipulative, postural, or environmental limitations, which one would necessarily expect to arise from such impairments. (<u>Id.</u>). Contrary to the plaintiff's allegations, the ALJ's RFC finding is based on the opinions and diagnoses of licensed medical experts. (Tr. 30). In the instant case, the ALJ found that the plaintiff has the residual functional capacity to perform a limited range of medium and light work as defined in 20 C.F.R. § 404.1567(c) and 416.967 (c) and the plaintiff is able to perform the demands of unskilled work that involves occasionally dealing with supervisors, the public, and coworkers. (<u>Id.</u>). In reaching his decision, the ALJ relied on the plaintiff's own testimony as well as documentation from various medical professionals. (Tr. 30-36). The ALJ's decision discussed

each of the four functional areas set out in the disability regulations for evaluating mental disorders: (1) activities of daily living; (2) social functioning; (3) concentration, persistence or pace; and (4) episodes of decompensation. (Tr. 28).

The undersigned finds that the ALJ's RFC finding is supported by substantial evidence and based on all of the relevant medical and other evidence in the case record. 20 C. F. R. § 416.945(a). The ALJ thoroughly considered Dr. Miro's examination in assessing the plaintiff's ADL. (Tr. 29). The ALJ concluded that the plaintiff only had mild restrictions. (Tr. 29, 31). On October 5, 2010, Dr. Miro noted that the plaintiff was completely independent in all of his self-care including personal hygiene, grooming, dressing, eating and bathing. (Tr. 29). Moreover, the ALJ gave weight to Dr. Artiles' assessment of the plaintiff. (Tr. 32). On March 28, 2011, Dr. Artiles noted that the plaintiff was able to take care of his personal hygiene, could prepare a simple meal, could watch television, could clean the house at times, and could take care of his room. (Tr. 29).

In the area of social functioning, the ALJ found that the plaintiff had only moderate difficulties. (Id.). In reaching his conclusion, the ALJ considered the fact that the plaintiff claimed that he stayed mostly at home with his wife and daughter and went out with his wife or other family members. (Id.). Additionally, the ALJ noted that the plaintiff did not claim any difficulties with his living arrangement. (Id.). The ALJ gave weight to Dr. Artiles' assessment of the plaintiff. (Id.). Dr. Artiles noted on March 28, 2011, that the plaintiff did not care to have social interactions. (Id.). The ALJ noted that the Report of Contact dated November 18, 2010, indicated that the plaintiff does not have any friends, spends time with family, and has the hobbies of reading, drawing, and watching television. (Tr.29). The ALJ also noted that the

27

plaintiff did not get along with others, however, the plaintiff reported that he had been looking for work and had applied to construction sites and factories. (Id.). The ALJ further noted that the plaintiff acted appropriately during the hearing and he interacted meaningfully with the court, his counsel and office staff. (Id.).

In the area of concentration, persistence or pace, the ALJ found only moderate difficulties. (Id.). The ALJ gave weight to the evaluation of the plaintiff conducted by Dr. Miro in October 2010. (Id.). Dr. Miro's notes indicated that the plaintiff's test results did not show any impairment in concentration and the plaintiff's task persistence was adequate. (Id.). Further, the ALJ gave weight to the plaintiff's testimony. (Id.). The ALJ noted that the plaintiff reported that his hobbies included reading, drawing, and watching television. (Id.). The ALJ then concluded that the plaintiff was found to be logical, coherent, and in good touch with reality and that the plaintiff was able to answer all questions appropriately. (Id.).

No episodes of decompensation for extended duration were noted throughout the record, which led the ALJ to determine that the plaintiff's degree of limitation in this area was "none". (Id.). When the degrees of limitation in the first three areas of function are rated as "none" or "mild", and when the degree of limitation in the fourth area of function is rated as "none", an ALJ will "generally conclude" that the mental impairment is "not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in [the claimant's] ability to do basic work activities." 20 C.F.R. § 404.1520(a)(d)(1) and § 416.920(a)(d)(1). Thus, the plaintiff's own description of his daily life, as well as medical and treatment records, provide ample evidence on which the ALJ based his finding that the plaintiff's impairments did not reach the level of severity required to meet or equal any of the listings. (Tr. 28-29). Additionally, the ALJ

provided this Court with sufficient reasoning explaining and supporting his decision.

As outlined above, the evidence in the record substantially supports the ALJ's finding that the plaintiff's pain did not significantly limit his ability to do basic work activities, and was not severe. The undersigned finds that the ALJ ruled properly when determining that the plaintiff has the residual functional capacity to perform a limited range of medium and light work as defined in 20 C.F.R. § 404.1567(c) and § 416.967 (c) and is able to perform the demands of unskilled work that involves occasional dealing with supervisors, the public, and coworkers.

In accordance with the foregoing, the undersigned finds that the ALJ properly considered all of the evidence in the record, including all of the medical evidence in the record, in its totality, in assessing the plaintiff's RFC, and the ALJ's RFC finding is supported by substantial evidence. 20 C. F. R. § 416.945(a).

### IV. The ALJ Properly Evaluated the Plaintiff's Credibility

"[C]redibility determinations are the province of the ALJ," and a court may not disturb a clearly articulated credibility finding supported by substantial evidence. See Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005) (citing Wilson v. Heckler, 734 F.2d 513, 517 (11th Cir. 1984)); See also Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995).

The plaintiff argues that the ALJ's decision does not contain any rationale to support his conclusion. (DE# 24, at 20, 12/17/2015). The plaintiff asserts that the ALJ's credibility assessment is similarly unsupported by substantial evidence in the record. (Id. at 19.). However, in this case the ALJ determined that the plaintiff's statements regarding the disabling effects of his symptoms were not entirely credible based on careful consideration of the evidence of record. (Tr. 30-36). The plaintiff alleges disabling symptoms, however, the ALJ noted that the evidence

showed that many of the plaintiff's symptoms improved over time with medication and treatment. (Tr. 33). On November 13, 2013, the ALJ noted that the plaintiff stated that he felt "well" and is now "stable". (Id.). Moreover, the ALJ noted that with respect to ADL, the plaintiff reported that he was completely independent in all of his self-care, including personal hygiene, grooming, dressing, eating, and bathing, and that he helped clean and organize the house. (Tr. 29, 33).

The Eleventh Circuit

> has established a three part "pain standard" that applies when a claimant attempts to establish disability through his or her own testimony of pain or other subjective symptoms. The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain. *See Landry v. Heckler,* 782 F.2d 1551, 1553 (11th Cir.1986). The standard also applies to complaints of subjective conditions other than pain. *Jackson v. Bowen,* 873 F.2d 1111, 1114 (8th Cir.1989).

Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991).  The plaintiff further suggests that the ALJ failed to acknowledge the Eleventh Circuit Pain standard, however, the plaintiff's argument lacks merit because the ALJ cited 20 C. F. R. § 404.1529 and § 416.929, the relevant regulations pertaining to assessing credibility. (Tr. 30).

## RULING

In accordance with the foregoing Order, it is hereby

ORDERED AND ADJUDGED that the decision of the Commissioner is **AFFIRMED**, the Defendant's Motion for Summary Judgment with Supporting Memorandum of Law and Opposition to Plaintiff's Motion for Summary Judgment (DE# 28,02/18/2016) is **GRANTED,**

and the Plaintiff's Motion for Summary Judgment with Supporting Memorandum of Law (DE#

24, 12/17/2015) is **DENIED**.

      DONE AND ORDERED at the United States Courthouse, Miami, Florida this 26th day of

July, 2016.

                                 JOHN J. O'SULLIVAN
                                 UNITED STATES MAGISTRATE JUDGE

Copies provided to:
All counsel of record